UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cr-00387-SRC-1 |
| ) | |
| RASHAAD COTTON, ) | |
| ) | |
| Defendant. ) | |

**Memorandum and Order**

The Court received a difficult-to-understand letter from Rashaad Cotton, which the Court construed as a compassionate-release motion. Because Cotton is in primary state custody and has not exhausted his administrative remedies, the Court must dismiss Cotton's motion without prejudice.

**I.   Background**

   **A.   Offense background**

The Presentence Investigation Report sets forth the following facts:

   On April 30, 2021, officers responded to the 3400 block of Greiner in St. Charles, Missouri for a reported disturbance. Officers contacted R.B., who advised he observed a silver Hyundai Elantra parked in front of his residence earlier in the evening. R.B. further advised he observed his neighbor, a juvenile female, exit the vehicle and walk towards her residence at 3416 Greiner. A short time later, Cotton exited the passenger seat of the vehicle. [Cotton] walked towards the middle of the street holding an apparent "Molotov cocktail." [Cotton] lit the Molotov cocktail and threw it onto the street, where it exploded and spread to the yard of 3417 Greiner. [Cotton] immediately ran back to the vehicle and La'Precious Blakely drove from the area, only stopping to pick up the juvenile female. R.B. extinguished the fire in the street and yard of 3417 Greiner. While officers were present, S.W. exited 3416 Greiner and advised investigating officers she possessed door camera footage of the incident, and advised Cotton began dating her daughter, the female juvenile, approximately two months prior. S.W. also advised Cotton was diagnosed with schizophrenia and was not medication compliant. While investigating the scene on Greiner, officers heard a call for

service at Sauce on the Side, involving the same vehicle and subjects throwing Molotov cocktails at the business.

. . .

Officers responded to Sauce on the Side for a disturbance.  Sauce on the Side is a restaurant which was open for business at the time with several customers present both inside and outside the building.  While enroute to Sauce on the Side, officers were advised witnesses identified Cotton as a former employee of the business, who was terminated the night before.  Witnesses further stated Cotton and the juvenile female threw Molotov cocktails onto the business' patio, side of the building, and area near the front door before they fled on foot towards the rear of the business.  Employees were able to extinguish the fire prior to officers' arrival.  H.K. and R.K. were seated on the patio when the Molotov cocktails were thrown, and H.K. suffered a minor burn to the upper left leg; however, declined medical attention.  R.K.'s cellular phone and phone case were both significantly burned.  H.K. and R.K. stated [Cotton] ran past their table, and the juvenile female threw a Molotov cocktail to the ground directly in front of their table before she fled on foot.  R.K. gave chase and grabbed ahold of the juvenile female in the grassy area near the rear of the business; however, [Cotton] ran up to him and punched R.K. in the jaw and stated, "This doesn't concern you."  There were three areas where Molotov cocktails had been thrown, and each had black marks on the ground and broken glass.  In total, two patio tables and five patio chairs were damaged, in addition to injuries suffered by H.K. and R.K.'s damaged cellular phone.  Review of surveillance footage revealed Cotton also suffered burn injuries to his right hand after lighting one of the Molotov cocktails.

. . .

At approximately 6:43 PM, officers responded to a vehicle crash involving the Hyundai Elantra at the intersection of Ameristar Boulevard and Fifth Street in St. Charles, Missouri.  Officers observed damage to the front end of the vehicle and the passenger side tires to be flat.  La'Precious Blakely was observed removing a baby inside a child car seat from the rear of the vehicle.  As officers attempted to place [Cotton] in custody, [Cotton] was combative with arresting officers and tried to pull his arms away to avoid being handcuffed.  After being secured in handcuffs, [Cotton] yelled "Shoot me! Shoot me," at officers before he was placed in the prisoner compartment of a police vehicle.  Cotton head-butted the window of the vehicle and was directed to stop before officers utilized pepper spray.  [Cotton] failed to comply with directives to stop headbutting the window and officers deployed pepper spray a second time.  [Cotton] then laid down in the prisoner compartment and began kicking the window and caused injury to an officer's hand after kicking the officer in the chest and face.  [Cotton] was transported to St. Joseph's Hospital for treatment, and when officers removed handcuffs that confined Cotton to the hospital bed, he attempted to flee from the

hospital room. [Cotton] was combative with officers, and a taser was used to gain compliance.

. . .

A search of the Hyundai Elantra revealed a clear plastic jug containing suspected gasoline, a clear glass bottle, a funnel, a lighter, several white rags, a black facemask, a backpack containing a stolen license plate, and a brown purse containing miscellaneous credit cards (names unknown) and U.S. currency.

. . .

Bottles and items seized from Sauce on the Side were analyzed by the St. Louis County, Missouri Police Department Crime Laboratory and found to disclose the presence of gasoline. The items were also analyzed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and were determined to be consistent with improvised incendiary bombs, commonly known as Molotov cocktails. The devices were constructed from glass bottles filled with a quantity of ignitable liquid identified as gasoline, and each utilized an ignition system consisting of an improvised wick inserted into the neck of the bottle. The devices were designed to function by aeration and ignition of the ignitable liquid. Agents with the ATF conducted a search of Cotton in the National Firearms Registration and Transfer records which revealed neither [Cotton] nor the destructive devices created by [Cotton] were registered.

. . .

On April 30, 2021, Rashaad Cotton was arrested by the St. Charles, Missouri Police Department. On May 1, 2021, Cotton was charged with Arson First Degree, two counts of Assault First Degree, two counts of Armed Criminal Action, Assault Third Degree Special Victim, Knowing Burning or Exploding, and Resisting Arrest under Docket No. 2111-CR01433-01 in Circuit Court, St. Charles, Missouri. On November 19, 2021, Cotton was transferred to the custody of the United States Marshals Service. . . .

Doc. 67 at ¶¶ 13–19 (emphases omitted).

### B.     Procedural background

In June 2021, a federal grand jury indicted Cotton on one count of damaging or destroying by fire or explosive materials any building, vehicle, or other real property used in interstate commerce in violation of 18 U.S.C. § 844(i) and one count of possession of an unregistered destructive device meeting the definition of a firearm in violation of 26 U.S.C.

3

§ 5861(d).  Docs. 1–2.  In December 2022, Cotton entered into a guilty-plea agreement with the United States.  Doc. 61.  Pursuant to the agreement, in exchange for Cotton's voluntary plea of guilty to count one (violation of 18 U.S.C. § 844(i)), the United States agreed to dismiss count two (violation of 26 U.S.C. § 5861(d)).  *Id*. at § 2.  In addition, the United States agreed that it would bring no further federal prosecution in this district relative to Cotton's attempting to burn the Sauce on the Side building on April 30, 2021, of which the United States was aware of at the time of the plea.  *Id*.  In April 2023, the Court sentenced Cotton to 60 months' imprisonment, to run concurrently with the case in St. Charles County under Docket No. 2111-CR-1433-01—unless the court in that case determined that the sentences should run consecutively to each other—followed by three years' supervised release.  Docs. 70–71.  Cotton did not appeal his conviction or sentence.  *See* doc. 73.

In September 2023, the St. Charles County Circuit Court sentenced Cotton to 12 years' imprisonment for his conduct, to run concurrently with Cotton's federal sentence.  Judgment, *State v. Cotton*, No. 2111-CR01433-01 (Mo. 11th Jud. Cir. Ct. Sep. 12, 2023).  Because Cotton was in primary state custody, he began serving his sentence at the Missouri Department of Corrections.  *See* docs. 7–8; *see also* doc. 67 at 1 (The Court cites to page numbers as assigned by CM/ECF.).  Cotton remains in state custody today.  Doc. 74 at 2 (reflecting that Cotton mailed his letter from the Missouri Department of Corrections' Crossroads Correctional Center); *see also Offender Search*, Mo. Dep't of Corr., https://web.mo.gov/doc/offSearchWeb/ (last visited July 1, 2025).

In January 2025, Cotton filed a difficult-to-understand letter:

My eyes have been watchful, fighting to survive, to learn, and to marvel as the law unfolds, hoping, to see, the results become reality, all this while amongst the wicked, and amongst, a bunch of animals, they are of danger, even some of the people, that work here, they are zombies, and I am, "one," who has surely survived,

4

> but, I don't know how long, I can stay awake, and, I am outnumbered, amongst them, please, I don't want you to think, I'm one of the them, for when I was marked by the beast, it had made me appear hostile, but they were doing unimaginal   things unto peoples   food, all of those things and while (Covid) was going around, I had to do, some-thing, they were potentially, killing people, (and now as), and now as I am sitting here around a bunch, of (affected) people, disaster is brought upon people, just from what they do to me, and it's not fair, because I didn't ask for this, please help, it is vital.

Doc. 74 at 1 (errors in original).  The Court construed Cotton's letter as a compassionate-release motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A).  Doc. 75.  The Federal Public Defender's office declined to supplement Cotton's motion.  Doc. 76.  The United States filed a response in opposition to Cotton's motion, doc. 79, but Cotton did not file a reply.

**II.    Standard**

The compassionate-release statute provides:

(c)  Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

> (1)    in any case—
>
> > (A)    the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i)    extraordinary and compelling reasons warrant such a reduction;
> > >
> > > . . .
> > >
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

5

18 U.S.C. § 3582(c)(1)(A).

After sentencing, district courts have very limited authority to modify the sentence.  *See* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except [under certain listed exceptions]."); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."   (alterations in original) (quoting 18 U.S.C. § 3582(b))); Fed. R. Crim. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.").   The Court may grant compassionate release if the court finds, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).

**III.    Discussion**

The United States argues that the Court should deny Cotton's motion for several reasons. *See* doc. 79.   The Court will address two of the United States' arguments that support denying Cotton's motion.   First, the United States argues that the Court should decline to reduce Cotton's sentence because the order would have no practical impact on Cotton's release from custody because he is currently in status custody.   *Id*. at 4–5.   Second, the United States argues that the Court should deny Cotton's motion due to his failure to exhaust his administrative remedies.   *Id*. at 5.   The Court agrees on both scores but need only analyze the failure-to-exhaust argument.

6

"According to the plain terms of § 3582(c)(1)(A), prisoners can bring compassionate-release motions on their own once they have exhausted their administrative remedies." *United States v. Houck*, 2 F.4th 1082, 1083 (8th Cir. 2021) (citation omitted). "Exhaustion occurs at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'" *Id.* at 1083–84 (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). "This requirement is a mandatory claim-processing rule." *Id.* at 1084 (citations omitted). But "[u]nlike jurisdictional rules, mandatory claim-processing rules may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)). As such, courts enforce the rule when the opposing party properly raises failure to exhaust as a defense. *Houck*, 2 F.4th at 1084; *Manrique*, 581 U.S. at 121.

Here, there is no evidence that Cotton exhausted his administrative remedies, and the United States has raised Cotton's failure to exhaust. Doc. 79 at 5. Therefore, the Court "dismiss[es] [the] unexhausted compassionate-release motion[] without prejudice." *Houck*, 2 F.4th at 1084.

### IV.   Conclusion

For the reasons set forth above, the Court denies Cotton's [74] Motion for Compassionate Release.

So ordered this 1st day of July 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE